**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SHARON VELASQUEZ,

      Plaintiff,

v.                                                                                         No. CIV 02-0483 RHS

JO ANNE BARNHART,
Commissioner, Social Security
Administration

**MEMORANDUM OPINION AND ORDER**

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure, filed February 12, 2003 [Doc. No.12]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 55, alleges a disability which commenced April 4, 1995 due to low back and left leg pain.

    2.  The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Ms. Velasquez was not disabled because she could perform her past relevant work. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Ms. Velasquez now seeks review of that final decision pursuant to 42 U.S.C. §405(g). At the time of the Secretary's or Commissioner's final decision, claimant was 53 years old, with a G.E.D. and past work experience as a bank teller and a cashier.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to apply the correct legal standards at step three in determining that the plaintiff did not meet or equal any listings; (2) the ALJ erred in discounting and giving no weight to the opinion of the treating physician; (3) the ALJ erred in his assessment that Plaintiff could perform her past work.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff testified that she has been unable to work since April 4, 1995, when she hurt her back as she lifted an item from a customer's grocery basket. Tr. at 308. She stated that she has continuous back pain, leg pain, and weakness which is made worse by walking, sitting or standing too long. Tr. at 311-313. She testified that she cannot climb stairs, bend or squat due to pain. Tr. at 316-317. She stated that can walk less than half a block, sit or stand for ten to fifteen minutes and occasionally lift 5-10 pounds. Tr. at 316-317.

8. Her employer referred her to Dr. Alan Jakins who examined Plaintiff on 4/10/95. He ordered x-rays of her lumbar spine, which were interpreted as "unremarkable," and gave her a prescription for a muscle relaxant and physiotherapy. On 4/24/95, a change in medication was prescribed and physical therapy was continued. On 5/8/95, he ordered an MRI which showed a mild bulge at the L4-5 disc space.  Tr. at 98-106.

9. On 7/24/95, Plaintiff was examined by orthopedic surgeon, Dr. Robert Peinert. His initial diagnosis was either traumatic discopathy or chronic facet joint irritation and he opined that she was capable of sedentary work at that time. He prescribed pain medication and aquatic therapy. Dr. Pienert referred Ms. Vasquez to Dr. David Hagstrom, an anesthesiologist and pain management specialist, for facet injections which provided very short term relief of pain. Tr. at 107-108, 151-156. Dr. Peinart completed a workers' compensation form in December 21, 1997, in which he stated that Plaintiff had been unable to work from the date of her injury and that he did not anticipate that she would be able to return to work until she underwent spinal surgery. Tr. at 21. He continued to treat Ms. Velasquez until 4/5/99, when he closed his office. Dr. Peinart then referred Plaintiff to Dr. Michael McCutcheon, also an orthopedic surgeon, who examined Plaintiff on July 13, 1999 and found that "the Patient's history and clinical findings are consistent and do give evidence to support

the complaints." He opined that she was not a good candidate for surgery and that she had a ten percent impairment as a result of her injury Tr. at 264.

10. Two independent medical examinations were conducted. On February 12, 1998, Dr. Wellborn concluded that Ms. Velasquez was capable of light work. Tr. at 135. On October 8, 1999, Dr. Schenck opined that Plaintiff was capable of light to moderate work. Tr. at 267-268.

**First Alleged Error**

11. Plaintiff contends that the ALJ failed to apply the proper standard in determining that her impairment did not meet or equal Listing 1.05(C), Disorders of the spine. A claimant is presumptively disabled if she has a vertebrogenic disorder with pain, muscle spasm, and significant limitation of motion in the spine and (emphasis added) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss persisting for at least three months despite prescribed therapy and expected to last twelve months. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.05 (C).

12. The ALJ did not specifically discuss why he found that Plaintiff's impairment did not meet the criteria of the listing, however, he did discuss the medical evidence in detail in his decision. While Ms. Velaquez had radiologic evidence of a vertebrogenic disorder, the ALJ did mention that her x-rays were essentially normal. Tr. at 23, and that her MRI's and CT scan showed no herniated discs and mild to moderate stenosis. Tr. at 24. The ALJ noted that there was no evidence of significant neurological involvement. Id. This conclusion is supported by the records of several physicians who examined Ms. Velasquez and found that she did not demonstrate asymmetrical reflex loss Tr. at 98, 105, 121, 133, 251, 263, 267, sensory loss Tr. at 133, 263, 266, or muscle atrophy. Tr. at 121, 251, 263, 266.

13. Plaintiff contends that the ALJ did not give sufficient consideration to the effect of the Plaintiff's pain in determining that her impairment did not meet or equal the Listing. In order for the ALJ to find her presumptively disabled, pain without the neurological criteria required by the Listing was insufficient. Substantial evidence supports the ALJ's determination that Plaintiff's impairment did not meet or equal Listing 1.05(C).

**Second Alleged Error**

14. Ms. Velasquez contends that the ALJ improperly discounted the opinion of Dr. Pienart, her treating physician. A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.2d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled. Id. at 290. The ALJ must consider the following specific factors to determine what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d)(2)-(6).

15. Dr. Peinart treated Plaintiff regularly for four years. He ordered numerous tests, and referred her to other doctors for evaluation including a pain management specialist. He is a board certified orthopedic surgeon. These are factors which should increase the weight given to Dr.

Peinart's opinion. However, the ALJ found that there were insufficient changes in the claimants physical condition or in her test results to justify the change in Dr. Peinart's opinion regarding her ability to perform work. Tr. at 23. He compared Dr. Peinart's opinion that Plaintiff suffered from very severe spinal stenosis with the December 1996 CT scan which described moderate spinal stenosis and the July 1999 evaluation by Dr. McCutcheon which noted mild spinal stenosis. Tr. at 24. The ALJ observed that there was no evidence of significant neurological involvement, that Plaintiff had not continued physical therapy and that she had not used significant prescribed medication. Id.

16. The ALJ relied upon the report from Dr. McCutcheon, a board certified orthopedic surgeon, who stated on March 19, 1999 that Plaintiff had a 10% impairment from her injury. Tr. at 24, 264. The ALJ also relied on the independent medical examinations performed in 1998 by Dr. Wellborn and in 1999 by Dr. Schenck and on the opinions of State Agency medical consultants Dr. Melvin Golish and Dr. Donald Stewart who concluded that she was capable of light work.

17. A treating physician's opinion generally is favored over that of a consulting physician. See Reid v.Chater, 71 F.3d 372, 374 (10th Cir. 1995). However, "[t]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the fact-finder, including opinions of other physicians." Id.

18. It is within the ALJ's authority to reject physician's opinions which are unsupported by the objective evidence of record. See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ, not the physician, is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1). The objective medical evidence and the opinions of Dr. McCutcheon and

the consulting physicians contradicted the opinion of the treating physician that the Plaintiff was totally disabled. Because there was substantial evidence that was inconsistent with Dr. Peinart's conclusion, the ALJ did not err in rejecting his opinion.

**Third Alleged Error**

19. Plaintiff contends that the ALJ erred in his assessment that Plaintiff could perform her past relevant work  At step four, the ALJ must "assess the nature and extent of physical limitations and determine residual functional capacity for work activity on a regular and continuing basis." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Step four of the sequential analysis, at which the ALJ found plaintiff not disabled, is comprised of three phases. "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity;... in the second, he must determine the physical and mental demands of the claimant's past relevant work.... In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id, (citing Henrie v. United States Dep't of Health & Hum. Servs., 13 F.3d 359, 361 (10th Cir. 1993)& SSR 82-62).

20. A vocational expert ("VE") testified at the hearing. While the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work. Winfrey, 92 F3d. at 1025.

21. The regulations provide that the Secretary will take notice of the Dictionary of Occupational Titles (DOT), published by the Department of Labor, in determining the appropriate category of a job. Campbell v. Bowen, 822 F.2d 1518, 1523 n.3 (10th Cir. 1987); see 20 C.F.R. § 404.1566(d)(1) (1986). Before an ALJ may rely on expert vocational evidence as substantial evidence

7

to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the DOT, and elicit a reasonable explanation for any discrepancy on this point. Haddock v. Apfel, 196 F.3d 1084 (10th Cir.1999).

22. The VE defined Plaintiff's work as a vault cashier as light, but medium as she performed it. Tr. at 333. The DOT actually defines that position as medium. DOT 211.382-010. The ALJ was unaware of the inconsistency between the VE's testimony and the DOT, and therefore did not elicit an explanation for the discrepancy as required by Haddock. Ms. Velaquez argues that her previous work, as actually performed, was more physically demanding than the category of employment to which the VE referred. If Plaintiff has the RFC to perform the actual functional demands of a particular past relevant job or the functional demands of the occupation as generally required throughout the national economy she can be denied benefits at step four. Winfrey, 92 F.3d at 1020. In the case of her past relevant work as a vault teller, the functional demands of the occupation appear to exceed her RFC under both applicable standards.

23. The ALJ presented the VE with three hypothetical questions. The first hypothetical assumed a residual functional capacity to perform medium work, with limited ability to travel and drive. Tr. at 335. The second hypothetical reduced the residual functional capacity to light work. Tr. at 335-336. The third hypothetical specified that the person could only sit for fifteen minutes at a time, stand for fifteen minutes at a time with no kneeling, stooping, bending over or climbing stairs with lifting and carrying limited to 5-10 pounds occasionally. Tr. at 337.

24. Unfortunately, parts of the first hypothetical question and parts of the VE's response to the second hypothetical question were not audible on the tape and were not part of the transcript of the hearing which was provided to the Court. Each page of the VE's testimony contains other

missing words and phrases which prevents a meaningful judicial review. Tr. at 332-341.

26. Despite the deficiencies of the transcript, it is possible for the Court to determine that there appears to be a discrepancy between the ALJ's finding number 7 and finding 8. The ALJ specifically found that Ms. Vealsquez had the residual functional capacity to "lift and carry up to 20 pounds occasionally and 10 pounds frequently..." Tr. at 26.( Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. SSR 83-10; 20 C.F.R. § 404.1567(b)). He also found that her past relevant work as a vault teller ( a medium job according to the DOT) was not precluded by her residual functional capacity. Tr. at 26. ( Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. SSR 83-10; 20 C.F.R. § 404.1567(c)).

26. Although it is not entirely clear what the parameters of the three hypothetical questions posed to the VE were based on the incomplete transcript, the ALJ appears to have relied on the VE's erroneous characterization of the vault teller position as light work as the basis for his finding that Plaintiff could return to her past work as a vault teller.  The response of the VE to the second hypothetical question with regard to Plaintiff's ability to perform as a cashier is also inaudible on the tape and therefore missing from the transcript. Although the ALJ asked the VE about other work that Ms. Velasquez would be able to perform, he did not include any finding based on that testimony in his decision. Because the ALJ found Plaintiff could return to her past work, he was not required to assess whether she could perform other work

27. This case must be remanded for clarification regarding the exertional demands of Plaintiff's past relevant work  If the ALJ finds on reconsideration that Plaintiff is unable to perform her past relevant work, then an evaluation of her ability to perform other work will be required.

9

28. In conclusion, the Court finds that: (1) the ALJ applied the proper standard in determining that Plaintiff's impairment did not meet or equal Listing 1.05(C); (2) the ALJ gave the treating physician's opinion its proper weight; and (3) The ALJ erred in his assessment that Plaintiff could perform her past relevant work.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure [Doc.12] is granted. This case will be remanded to the Commissioner for reconsideration of Plaintiff's ability to perform her past relevant work.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE